IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONALD D. MADDEN, | |
| Plaintiff, | 4:12-CV-3090 |
| vs. | |
| ANTON ANTONOV & AV TRANSPORTATION, INC., and BNSF RAILWAY COMPANY, | MEMORANDUM AND ORDER |
| Defendants. | |

This case arises from a collision between a train belonging to BNSF Railway Company and conducted by plaintiff Ronald D. Madden, and a truck driven by defendant Anton Antonov for AV Transportation (collectively, "Antonov"). This matter is before the Court on Antonov's motion to dismiss or strike (filing 61) portions of BNSF's cross-claim (filing 33). For the reasons discussed below, the Court will deny Antonov's motion.

## BACKGROUND

The following facts are drawn from Madden's operative complaint (filing 18) for background purposes only. On February 15, 2012, Madden was conducting a BNSF locomotive, heading toward a railroad crossing in Custer County, Nebraska. Filing 18 at ¶ 5. At that time, a large grain silo facility was being built adjacent to the railroad crossing. Filing 18 at ¶ 17–18. The facility was being built by BNSF together with The Andersons, Inc.[1]

As the train being conducted by Madden was heading toward the crossing, Antonov's truck was crossing the tracks. Filing 18 at ¶ 5. Antonov was hauling a piece of large equipment, and although his truck made it across the tracks in time, his trailer did not, and it was struck by the train. Madden suffered serious injuries as a result of the collision. Filing 18 at ¶ 5.

Madden brings state common law negligence claims against Antonov, and a claim against BNSF under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, et seq. Madden alleges that Antonov was negligent in,

---

[1] In his operative complaint, Madden also named The Andersons as a defendant. *See* filing 18 at ¶¶ 3, 16–27. Madden's claims against The Andersons have since been dismissed, without prejudice, pursuant to the parties' stipulation. Filings 58 and 59.

among other ways, failing to maintain a proper lookout and failing to stop at the crossing. Filing 18 at ¶¶ 9–12. Madden's FELA claim alleges, among other things, that BNSF failed to provide him with a reasonably safe place to work. Filing 18 at ¶ 33. Madden also alleges that the layout of the crossing at issue made it particularly dangerous, especially given the increased traffic due to construction near the intersection. Filing 18 at ¶ 6. So, Madden claims, BSNF should have taken steps to prevent this accident, such as implementing a "slow order" for trains, placing better warning devices or signs at the crossing, and coordinating with The Andersons or other authorities to maintain a lookout or safety signal and to generally improve safety at the crossing. Filing 18 at ¶ 33.

BNSF brings cross-claims against Antonov for negligence, equitable indemnification, equitable subrogation, and contribution. Filing 33 at ¶¶ 35–43. BNSF claims that it has incurred, and will continue to incur, damages in the form of Madden's medical bills and in attorney fees and costs spent investigating and defending Madden's claims. Filing 33 at 32–34, 40. In addition to requesting an award of fees incurred in defending Madden's claims, BNSF also seeks an award of fees spent prosecuting its cross-claim against Antonov. In response, Antonov has moved to dismiss or strike BNSF's claims for equitable indemnification and subrogation (but not its claim for contribution), as well as both parts of BNSF's request for attorney fees.

## STANDARD OF REVIEW
### I. Motion to Dismiss - Rule 12(b)(6)

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The plaintiff (or here, cross-claimant) must plead factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 555–57. In contrast to factual allegations, courts are not required to accept as true a plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, that if accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *Twombly*, 550 U.S. at 556.

## II. Motion to Strike - Rule 12(f)

Antonov has also filed a motion to strike the same portions of BNSF's cross-claim. The Court notes at the outset that this adds nothing to Antonov's motion to dismiss under Rule 12(b)(6), and finds that the motion to strike should be denied. Rule 12(f) provides that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While the Court has considerable discretion to strike pleadings under Rule 12(f), striking a party's pleading is an extreme and disfavored measure. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

The matters Antonov seeks to strike—claims for indemnity or subrogation and a request of attorney fees—are not defenses, and they are not redundant, impertinent, or scandalous. Nor are these matters immaterial. "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being [pleaded]." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Instead, Antonov's motion is simply an attempt to have portions of BNSF's complaint dismissed as lacking a basis in law—but the proper vehicle for such a challenge is a motion to dismiss or for summary judgment. *Id.* at 974–75. As such, Antonov's motion to strike will be denied.

## ANALYSIS
## I. BNSF's Claim for Equitable Indemnification

Antonov first argues that BNSF fails to state a claim for equitable indemnification under Nebraska law. Before turning to the specifics of Antonov's several arguments, it will help to review the two basic frameworks governing this claim: FELA and Nebraska indemnity law.

FELA makes a common carrier engaged in interstate commerce "liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51. FELA does not provide for apportionment of damages among potentially liable tortfeasors—the employer will be held entirely responsible, that is, jointly and severally liable, for the entire amount

of the worker's damages. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 161-62 (2003). So, an employee who suffers injury caused in whole or in part by a railroad employer's negligence may recover his full damages from the railroad, regardless of whether the injury was actually (or also) caused by the negligence of a third party. *Id.* at 161, 165–66.

That said, FELA does not bar railroads from seeking indemnity from third parties. *Ellison v. Shell Oil Co.*, 882 F.2d 349, 353 (9th Cir. 1989); *Ala. Great S. R.R. Co. v. Chicago & N.W. Ry. Co.*, 493 F.2d 979, 983 (8th Cir. 1974). The purpose of FELA is to provide recovery for injured workers, and this purpose is not defeated by permitting an employer to recoup its losses, in part or in full, from third parties. *Ellison*, 882 F.2d at 353.

State law governs a railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA.[2] *Ala. Great S. R.R. Co.*, 493 F.2d at 983; *see also Ayers*, 538 U.S. at 162 & n.21. Both parties agree that Nebraska law governs, because the accident underlying this case occurred in Nebraska. *See Johnson v. U.S. Fid. and Guar. Co.*, 696 N.W.2d 431, 438 (Neb. 2005) (citing *Restatement (Second) of Conflict of Laws* § 146 (1971)).

Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay or has agreed to pay. *Kuhn v. Wells Fargo Bank of Neb.*, 771 N.W.2d 103, 112 (Neb. 2009); *Warner v. Reagan Buick, Inc.*, 483 N.W.2d 764, 771 (Neb. 1992). Indemnity is a form of restitution which shifts the entire liability from one legally responsible party to another. *Wells Dairy, Inc. v. American Indus. Refrigeration, Inc.*, 762 N.W.2d 463 (Iowa 2009). Three types of indemnity are generally recognized: express (or contractual), implied contractual (also known as "implied-in-fact" indemnity), and equitable (also known as "implied-in-law" indemnity). *Kuhn*, 771 N.W.2d at 119–20; *Warner*, 483 N.W.2d at 770; *see also Schneider Nat'l., Inc. v. Holland Hitch Co.*, 843 P.2d 561, 573 (Wyo. 1992). Only the equitable variety is at issue in this case.

The doctrine of equitable indemnification, as its name suggests, is not based on an implied contract, but finds its roots in principles of equity. *Warner*, 483 N.W.2d at 770; *City of Wood River v. Geer-Melkus Constr. Co.*, 444 N.W.2d 305, 310 (Neb. 1989). Under this doctrine, where one party is compelled to pay money which in justice another ought to pay, the former may recover from the latter the sums so paid, unless the one making the payment is barred by the wrongful nature of his conduct. *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 443 N.W.2d 872, 876 (Neb. 1989); *see also*, *Warner*, 483 N.W.2d at 770; *Geer-Malkus*, 444 N.W.2d at 310.

---

[2] The Court sees no reason to treat BNSF's claim for equitable subrogation different in this regard, and will likewise evaluate that claim under Nebraska law.

Nebraska recognizes what other jurisdictions have termed the "active-passive" theory of equitable indemnity. *Wells Dairy*, 762 N.W.2d at 471; *Myco, Inc. v. Super Concrete Co., Inc.*, 565 A.2d 293, 297–98 (D.C. 1989). This variety of equitable indemnity rests upon a difference between the "primary" (or active) and "secondary" (or passive) liability of two parties, each of whom is made responsible by law to an injured party. *Hiway 20 Terminal*, 443 N.W.2d at 876. Such a situation may arise where one tortfeasor, by active conduct, has created a danger to the plaintiff, and the other, passive tortfeasor, has merely failed to discover or remedy the dangerous condition. *Id.* at 877. So, equitable indemnity is available to a party who, without active fault on its own part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which the first is only secondarily liable. *Id.* Secondary liability is that which "rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law . . . ." *Duffy Bros. Const. Co., Inc. v. Pistone Builders, Inc.*, 299 N.W.2d 170, 172–73 (Neb. 1980).

Antonov first argues that there is no set of circumstances under which BNSF could assert a viable claim for equitable indemnity. If BNSF is liable to Madden under FELA, Antonov reasons, then BNSF was necessarily at fault, and the wrongful nature of its conduct bars any indemnity claim. Alternatively, if BNSF is not liable to Madden under FELA, then there is nothing to indemnify. Antonov's argument assumes that a finding of liability under FELA necessarily implies a finding of active fault or primary liability on the railroad's part. However, as numerous courts have held, that is not the case, and BNSF may be liable to Madden under FELA, and yet only in a passive, constructive, or technical sense that will not bar a claim for indemnity against Antonov, if active negligence on his part was the real cause of Madden's injuries.

FELA imposes a nondelegable duty upon railroads to provide their employees with a safe place to work. *Lockard v. Mo. Pac. R.R. Co.*, 894 F.2d 299 (8th Cir. 1990). This duty is broader than the general common law duty of care. *Id.* The railroad's nondelegable duty extends to the property of third parties and includes an obligation to inspect the premises of third parties and to protect the railroad's employees from dangerous conditions. *Id.* So, under FELA, while a railroad can be liable for its own negligence, it can also be liable based on a dangerous condition caused or created solely by the negligent acts of a third party. *Harrison v. Illinois Cent. R. Co.*, 2009 WL 3156701, at *2–3 (S.D. Ill. 2009); *see also*, *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 226 (6th Cir. 2002); *Ellison*, 882 F.2d at 353–54; *Burlington N., Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 285 (8th Cir. 1982); *Ala. Great S.*

*R.R. Co.*, 493 F.2d at 982–83; *Brown v. CSX Transp., Inc.*, 363 F. Supp. 2d 1342, 1344 (M.D. Fla. 2005); *Summar v. Ind. Harbor Belt R. Co.*, 515 N.E.2d 130 (Ill. Ct. App. 1986); *Schrier v. Ind. Harbor Belt R. Co.*, 402 N.E.2d 872 (Ill. Ct. App. 1980); *see generally* V. G. Lewter, *Right of Railroad, Charged With Liability for Injury to or Death of Employee Under Federal Employers' Liability Act, to Claim Indemnity or Contribution from Other Tortfeasor*, 19 A.L.R.3d. 928, § 2 (1968). Under these circumstances, a railroad may have a claim for indemnity as a passive tortfeasor against another tortfeasor whose active conduct created the danger to the plaintiff. *Mills*, 276 F.3d at 226–27; *Welch v. Kan. City S. Ry. Co.*, 2013 WL 1702174, at *7–8 (W.D. La. 2013); *Harrison*, 2009 WL 3156701 at *2–3; *Summar*, 515 NE.2d at 132–33; *Schrier*, 402 N.E.2d at 873–78.

Antonov argues that the Eighth Circuit has found FELA to require a level of culpability beyond technical or constructive fault, and that FELA liability precludes a claim for indemnity under Nebraska law, citing *Brassette v. Burlington N. Inc.*, 687 F.2d 153 (8th Cir. 1982). But Antonov's reliance on *Brassette* is misplaced. *Brassette* did not deal broadly with whether the standard of care under FELA or even whether FELA defendants could generally assert claims for equitable indemnity. Rather, *Brassette* dealt with whether a specific defendant was entitled to a jury instruction on indemnification. *Brassette*, 687 F.2d at 156. And the court held only that in the case before it, where there was "overwhelming" evidence of active negligence on the railroad's part, the railroad was not entitled to an instruction on indemnity. *Id.* In this case, it remains to be seen whether and to what extent BNSF is liable at all; and whether any act or omission on its part is better deemed mere passive or technical negligence, or rather an active, proximate cause of Madden's injuries. However, the facts alleged in BNSF's cross-claim set forth a plausible claim for equitable indemnity, and that is all that is required at this stage. *Iqbal*, 556 U.S. at 678.

Antonov next argues that Nebraska law only allows equitable indemnity in instances involving "a special relationship" between the indemnitee and indemnitor or an express agreement to indemnify. *Harsh Int'l, Inc. v. Monfort Indus., Inc.*, 662 N.W.2d 574, 580 (Neb. 2003). Examples of special relationships capable of supporting an implied obligation to indemnify include those of principal and agent, bailor and bailee, or a situation giving rise to vicarious liability. *Id.* There is no contract for indemnification in this case, and there is no special relationship between Antonov and BNSF. So, Antonov argues, BNSF fails to state a claim for equitable indemnity.

Antonov's reliance upon *Harsh* is misplaced, however, as that decision only addressed whether to allow indemnity against an employer already

subject to a claim under the Nebraska Workers' Compensation Act. That statute provides the exclusive remedy by an employee against an employer for injuries arising out of and in the course of employment. *Id.* at 579. The *Harsh* court held only that it would not expand the exception to this exclusivity provision beyond cases involving express indemnity or special relationships supporting an obligation to indemnify. *Id.* at 580. The case does not stand for the broader proposition that equitable indemnification claims always require such a special relationship. *See Skuzinski v. Bouchard Fuels, Inc.*, 694 A.2d 788, 791 (Conn. 1997) (rejecting similar argument).

No Nebraska case supports Antonov's broader contention—that equitable indemnity generally requires a special relationship between the indemnitee and indemnitor. There is a split of authority on this point among other jurisdictions. After carefully considering the existing Nebraska caselaw and that of other jurisdictions, the Court finds that the Nebraska Supreme Court would not require a special relationship in the run-of-the-mill claim for equitable indemnity (i.e., for claims outside the workers' compensation context discussed in *Harsh*).

Several jurisdictions require a preexisting, independent, or "pretort" legal relationship between the indemnitee and indemnitor, such as employer/employee, that gives rise to a duty to indemnify. Wyoming, for example, requires an "independent legal relationship" which must be more than the relationship "established by virtue of one party alleging that he was sued because of another party's wrongdoing" or the type of broad, general duty of care owed by all persons not to negligently cause harm. *Habco v. L & B Oilfield Serv., Inc.*, 138 P.3d 1162, 1164–65 (Wyo. 2006); *see also*, *White Elec. Servs., Inc. v. Franke Food Serv. Sys.*, Inc., 2010 WL 1542575, at *2–3 (N.D. Okla. 2010); *Harrison*, 2009 WL 3156701 at *4; *N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 198 P.3d 342, 349 (N.M. 2008); *The Doctors Co. v. Vincent*, 98 P.3d 681, 687–88 (Nev. 2004); *Allison v. Shell Oil Co.*, 495 N.E.2d 496 (Ill. 1986); *Hiltz v. John Deere Indus. Equipment Co.*, 497 A.2d 748, 751 (Vt. 1985).

Other jurisdictions, like Nebraska, recognize the "active-passive" theory of indemnity, and do not require any relationship between the active and passive tortfeasors. *Mills*, 276 F.3d at 226; *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 781–82 (Ky. 2000); *Skuzinski,* 694 A.2d at 791–92. In these jurisdictions, the right to indemnity is based instead solely on the disparity in fault between the tortfeasors.

In a comprehensive discussion of the history of indemnity, the Iowa Supreme Court explained that the active-passive theory of indemnity is one of several branches of equitable indemnity, and that it is separate and distinct from another branch based upon the parties' pre-existing

- 7 -

relationships (i.e., vicarious liability), and still another branch based upon an "independent duty" between the indemnitor and indemnitee.[3] *Wells Dairy*, 762 N.W.2d at 471–72; *see also*, *Joshi v. U.S.*, 2009 WL 2449234, at *3 (N.D. Ind. 2009); *Myco*, 565 A.2d at 297–98; *Allison*, 495 N.E.2d at 498–99.

The Nebraska Supreme Court has suggested that it would also distinguish between the active-passive and vicarious branches of indemnity. "The obligation to indemnify may grow out of an implied contractual relation *or out of a liability imposed by law*." *Hiway 20 Terminal*, 443 N.W.2d at 876 (emphasis supplied). Similarly, in *Duffy Bros.*, the court stated that secondary liability "rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, *or* arising from some positive rule of common or statutory law . . . ." *Duffy Bros.*, 299 N.W.2d at 172–73 (emphasis supplied).

The Court finds that the Nebraska Supreme Court would distinguish between the active-passive and vicarious branches of indemnity, rather than conflate the two or import requirements from one to the other. Therefore, BNSF need not allege any relationship between itself and Antonov in order to support a claim for equitable indemnity.

## II. BNSF's Claim for Equitable Subrogation

Antonov's next argument, that BNSF has failed to state a claim for equitable subrogation, is likewise without merit. Under Nebraska law, equitable subrogation is available when one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability. *Rawson v. City of Omaha*, 322 N.W.2d 381, 384. (Neb. 1982); *see also*, *Buckeye State Mut. Ins. Co. v. Humlicek*, 822 N.W.2d 351, 354 (Neb. 2012); *Chadron Energy Corp. v. First Nat'l. Bank of Omaha*, 459 N.W.2d 718, 734 (Neb. 1990). The doctrine of equitable subrogation is applied to serve the ends of justice and to do equity in the particular case under consideration. *Rawson*, 322 N.W.2d at 384. No general rule can be laid down which will afford a test for its application in all cases; the facts and circumstances of each case determine whether the doctrine is available. *Id*. However, subrogation is not allowed where the debt

---

[3] Iowa has since abandoned the active-passive branch of equitable indemnity in light of the enactment of Iowa's Comparative Fault Act. *Wells Dairy*, 762 N.W.2d at 471. However, the active-passive branch remains a viable theory of indemnity in Nebraska, and the Nebraska Supreme Court has given no sign that the doctrine has been abrogated by the adoption of principles of comparative fault. *Kuhn*, 771 N.W.2d at 119–20.

paid is one for which the payor is primarily liable. *Chadron Energy*, 459 N.W.2d at 734.

Antonov argues that BNSF is not entitled to equitable subrogation because only BNSF can be primarily liable for Madden's FELA claim—the statute does not apply to Madden, and he is not a proper defendant under FELA. This argument is without merit. A claim for subrogation requires only a common *harm* that both parties may be held liable for, and this common liability need not rest upon the same grounds or theories of recovery. *Cf.* *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 153 (Iowa 2001) (common liability in context of contribution does not require common theories of recovery); *Tebo v. Havlik*, 343 N.W.2d 181, 212 & nn.83–84 (Mich. 1984) (collecting cases); V. G. Lewter, *Right of Railroad, Charged With Liability for Injury to or Death of Employee Under Federal Employers' Liability Act, to Claim Indemnity or Contribution from Other Tortfeasor*, 19 A.L.R.3d 928, § 2 (1968).

This principle was clearly illustrated in *Rawson*. While driving her car on a city street, Rawson struck a large pothole, which caused her to lose control of her vehicle and collide with several other vehicles. *Rawson*, 322 N.W.2d at 382–83. After settling with the other drivers, Rawson brought suit against the city, claiming that the accident was caused by the negligence of the city in failing to fill the pothole and seeking subrogation for the sums paid in the settlement. *Id.* She was held entitled to subrogation even though her alleged negligence (the manner of her driving) was separate and distinct from the city's (failing to fill a pothole). Rawson was not under a duty to fill the pothole herself, and the city had no duty to control Rawson's driving: but the lack of a common duty or theory of recovery did not bar Rawson's claim for equitable subrogation. At this stage, there is little practical difference between BNSF's claims for subrogation and indemnification—BNSF has adequately pleaded both and Antonov's motion to dismiss will be denied.

### III. BNSF's Request for Attorney Fees

Finally, Antonov argues that the Court must dismiss or strike BNSF's demand for attorney fees, because there is no basis for such fees under FELA or state law. As noted above, BNSF seeks two types of attorney fees: those incurred in defending Madden's claims and those spent prosecuting its cross-claim against Antonov. The Court finds that BNSF may be entitled to recover the first type as part of the damages for its indemnity claim. However, BNSF is not entitled to recover the second type of fees in this manner, and in that regard, Antonov's motion to dismiss will be granted.

Both Nebraska and the Eighth Circuit follow the "American rule," under which a prevailing party is generally not entitled to recover attorney

fees from its opponent, unless authorized by statute or another source of law. *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013); *Stewart v. Bennett*, 727 N.W.2d 424, 429 (Neb. 2007). FELA does not authorize an award of attorney fees in this case, at least not directly. *See Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 495 (1980). As noted above, however, a railroad's right to recover indemnity for liability incurred under FELA is governed by state law. *Ala. Great S. R.R. Co.*, 493 F.2d at 983. And in this case, Nebraska law does provide for the possibility of recovering some of the attorney fees sought by BNSF.

Nebraska recognizes the "tort-of-another" doctrine:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

*Tetherow v. Wolfe*, 392 N.W.2d 374, 379 (Neb. 1986) (quoting Restatement (Second) of Torts § 914(2) (1979)); *see also Zimmerman v. FirsTier Bank, N.A.*, 585 N.W.2d 445, 454 (Neb. 1998). Under this doctrine, if BNSF is entitled to indemnity from Antonov, then it may also be entitled to an award of fees incurred defending Madden's claims against itself.[4] Such fees are not awarded as costs of the action, but as an element of consequential damages resulting from the indemnitor's wrongful conduct.[5] *Seawest Inv. Assocs., LLC v. Leisher*, 2012 WL 1920524, at *2 and n.3 (Wash. Ct. App. 2012).

---

[4] At this time, the Court only addresses BNSF's entitlement to attorney fees in the context of its claim for equitable indemnity. BNSF has focused its arguments on that theory, rather than subrogation or contribution. *See*, filing 33 at ¶¶ 42–43; filing 69 at 8. To rule on Antonov's motion to dismiss, the Court need not explore the viability of every possible manner in which BNSF could recover attorney fees. Because BNSF may be entitled to fees through its indemnity claim, Antonov's motion will be denied.

[5] Section 914(2) speaks of claiming fees incurred in an "earlier action." Read technically, this might be understood to imply that an indemnitee is not entitled to claim attorney fees where there has been no earlier action, such as here, where the indemnity claim is joined with the underlying dispute between the injured party and multiple defendants. But that reading is refuted by common sense and decisions interpreting § 914(2). (Nor does Antonov advance such an argument.) The tort-of-another doctrine does not contain a "separate-and-earlier[-]action" requirement. *De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, 2009 WL 678625, at *5 (E.D. Pa. 2009). Rather, the "critical distinction . . . is not between present and prior proceedings, but rather between litigation against a third party caused by the wrongful acts of another and litigation against the wrongdoer to recover attorney fees

However, BNSF is not entitled to recover the costs incurred prosecuting its counter-claim, including those spent establishing the right to indemnity. *See, e.g.*, *Embassy of the Arab Rep. of Egypt v. Lasheen*, 603 F.3d 1166, 1173 (9th Cir. 2010) (applying Pennsylvania law); *Brewer Envtl. Indus., LLC v. Matson Terminals, Inc.*, 2011 WL 1637323, at \*15 (D. Haw. 2011). BNSF itself acknowledges that this is the general rule, and presents no reason to deviate from it. Filing 69 at 8. Therefore, the Court finds that BNSF is not entitled to an award of fees incurred prosecuting its cross-claim against Antonov under the tort-of-another doctrine, and in that regard only, Antonov's motion to dismiss is granted. Accordingly,

IT IS ORDERED:

1.    Antonov's motion to dismiss or strike (filing 61) is granted in part and denied in part:

     a.    Antonov's motion to strike is denied in its entirety.

     b.    Antonov's motion to dismiss is granted in part: BNSF is not entitled to an award of attorney fees incurred prosecuting its cross-claim as an element of damages under the tort-of-another doctrine.

     c.    The remainder of Antonov's motion to dismiss is denied.

Dated this 19th day of August, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge

---

for having to defend against a third party." *Blair v. Boulger*, 336 N.W.2d 337, 340 (N.D. 1983).