IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONALD D. MADDEN,<br><br>           Plaintiff,<br><br>   vs.<br><br>ANTON ANTONOV,  AV<br>TRANSPORTATION, INC.,  THE<br>ANDERSONS, INC.,  BNSF RAILWAY<br>COMPANY,<br><br>           Defendants. | **4:12CV3090**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Ronald Madden's complaint against Defendant BNSF Railway Company ("BNSF") seeks recovery under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. ("FELA"), for injuries Madden sustained when the locomotive he occupied collided with a commercial truck.  The accident occurred on February 15, 2012, at a railroad grade crossing on County Road 429 in Custer County, Nebraska. Among other things, the plaintiff alleges the railroad failed to adequately instruct trainmen on how to reduce the risk of injury from grade crossing collisions, and it failed to construct and maintain a reasonably safe railroad crossing at County Road 429.  (Filing No. 18, at CM/ECF p. 11, ¶ 33 (e, g & i).

The following substantive motions are pending before me:

Filing No. 118:      Motion to Compel Discovery

Filing No. 126:      Motion for Protective Order

Filing No. 142:      Motion to Continue

For the reasons discussed below, the plaintiff's motion to compel and the railroad's motion for protective order will each be granted in part, the railroad's motion to continue will be granted, and a hearing will be held to discuss further case progression.

**<u>Motion to Compel (Filing No. 118)</u>**
**<u>Motion for Protective Order (Filing No. 126)</u>**


The plaintiff moves to compel BNSF to answer discovery:  1) requesting information and documentation of prior claims filed by BNSF employees for injuries sustained during grade crossing collisions; and 2) requesting information and documentation regarding other grade crossing accidents occurring in Nebraska for the past 10 years, and through the entire BNSF system for the past five years.  As to the request for grade crossing information, the railroad filed a motion for protective order.


The railroad prepared and served a detailed privilege log describing all documents withheld, the author and recipients of those documents, the person currently in possession of the documents, and the basis for objecting to disclosure.  (Filing No. 120-3).  The plaintiff asked the court to review, in camera, "all documents identified in BNSF's Privilege Log on Pages 1 - 15 as soon as reasonably possible so as to examine the content and purpose of said documents to verify whether BNSF" is entitled to assert the privilege afforded under 23 U.S.C. § 409.  (Filing No. 135, at CM/ECF p. 17).  As ordered by the court, the railroad delivered a compact disc containing the documents to the chambers of the undersigned magistrate judge.  (Filing No. 138).  Those documents were delivered on July 9, 2014, and were uploaded on the court's CM/ECF system under seal.  (Filing No. 140).


1.    <u>Discovery of information regarding prior injuries sustained by railroad employees in grade crossing accidents.</u>

As to discovery of prior employee injury claims arising from grade crossing accidents, the plaintiff's discovery requests, and the railroad's corresponding responses are as follows:

INTERROGATORY NO. 21: Within the ten (10) years prior to the subject collision and at any time since the subject collision, please state the number of crossing collisions in the State of Nebraska that have occurred involving a train controlled and/or operated by this Defendant and state the dates, locations and mileposts of every such collision.

ANSWER: BNSF objects to this Interrogatory as overly broad and irrelevant to the claims and defenses of the parties, not reasonably calculated to lead to the discovery of relevant and admissible evidence, and beyond the scope of discovery permitted by Rule 26.

REQUEST FOR PRODUCTION NO. 32: For the past ten (10) years, produce a list of all reported claims (similar to the list attached herewith as Plaintiff s Exhibit A produced by BNSF in other litigation) involving employees of Defendant BNSF who reported sustaining injuries as a result of being involved in a crossing accident in the State of Nebraska.

RESPONSE: BNSF objects to this request on the grounds that it is overly broad and unduly burdensome. BNSF also objects to this request on the grounds that it seeks information regarding incidents and/or claims that lack the requisite "substantial similarity" with respect to time, location, employee craft, crossing conditions and configuration, instrumentalities, equipment, and other conditions and factors and therefore is not reasonably calculated to lead to the discovery of relevant and admissible evidence. This request also seeks confidential and private medical information and non-party employees have not waived the release of their confidential information. Finally, BNSF objects to the extent this request seeks information that is attorney-client privileged, attorney-work product, or otherwise protected from disclosure pursuant to state and/or federal law, such as 49 U.S.C. § 20903, 49 U.S.C. § 20907, and 49 C.F.R. § 229.7.

REQUEST FOR PRODUCTION NO. 33: For the past five (5) years, produce a list of all reported claims (similar to the list attached herewith as Plaintiff s Exhibit A produced by BNSF in other litigation) involving employees of Defendant BNSF who reported sustaining injuries as a result of being involved in a crossing accident on BNSF's railroad system (i.e. system-wide).

RESPONSE: BNSF objects to this request on the grounds that it is overly broad and unduly burdensome. BNSF also objects to this request on the

grounds that it seeks information regarding incidents and/or claims that lack the requisite "substantial similarity" with respect to time, location, employee craft, crossing conditions and configuration, instrumentalities, equipment, and other conditions and factors and therefore is not reasonably calculated to lead to the discovery of relevant and admissible evidence. This request also seeks confidential and private medical information and non-party employees have not waived the release of their confidential information. Finally, BNSF objects to the extent this request seeks information that is attorney-client privileged, attorney-work product, or otherwise protected from disclosure pursuant to state and/or federal law, such as 49 U.S.C. § 20903, 49 U.S.C. § 20907, and 49 C.F.R. § 229.7.

(Filing Nos. 120-1; 120-6).

The plaintiff claims the information requested is relevant to show the railroad was on notice that grade crossing accidents pose a risk of injury to railroad employees, and to show the frequency and extent of that risk. The plaintiff argues the railroad can collect this information by running a simple database search, and any claim of burden is specious. (Filing No. 119, at CM/ECF p. 10). In support of this argument, the plaintiff submitted a database printout from a different case which lists lawsuits filed for "BNSF engineer and conductor musculoskeletal injuries allegedly due to ride quality - loco vibration - Track conditions getting on/off moving equipment - working/walking on ballast," (Filing No. 120-5); excerpts from a 2006 deposition of Michael Hartung-Schuster, who maintains a database of BNSF employee injury reports and explained the capability and limitations of performing a database search for injuries arising from connecting electrical cables, (Filing No. 120-10); and a BNSF interrogatory response from a different case stating a database search would be run to create a list of all employee claims and lawsuits alleging injuries resulting from dismounting locomotives. (Filing No. 120-11).

The railroad counters that "Plaintiff's motion to compel production of all claims, by all train crews over ten years involved in any type of grade crossing incidents

throughout BNSF's system of 28 states and 3 countries" must be denied as overly broad, unduly burdensome, and irrelevant.   BNSF further argues the plaintiff's requests for Nebraska crossing information for a timeframe of ten years, spanning from before the 2012 crossing accident and to the present, is overly broad.   The railroad explains incidents and accidents which occurred after the plaintiff's accident are not relevant to the claims and defenses alleged in this case, and as to those incidents occurring prior to the accident, the plaintiff's discovery is not limited to the subject crossing accident, the same or similar type of working conditions, or the equipment involved in the plaintiff's accident.  (Filing No. 127, at CM/ECF p. 16).  As such, the railroad argues the discovery requests are "facially overbroad or unduly burdensome," and the railroad "need not provide specific, detailed support" to raise and stand on its objections. Carlton v. Union Pac. R. R. Co., 2006 WL 2220977 (D. Neb. 2006) (citing Contracom Commodity Trading Co. v. Seaboard, 189 F.R.D. 655, 665 (D. Kan. 1999).

Evidence of other lawsuits and complaints need not be admissible at trial to be subject to discovery.   When interpreting the relevance of discovery regarding other accidents, the court need only find that the circumstances surrounding those accidents are similar enough to the accident at issue that discovery concerning those incidents is reasonably calculated to lead to disclosure of substantially similar occurrences. Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 633 (D. Kan. 2005); Kramer v. Boeing Co., 126 F.R.D. 690, 692–95 (D. Minn. 1989).

Interrogatory 21 requests a listing of every crossing accident in Nebraska for the last 10 years involving a BNSF train, along with the dates, locations and mileposts of every such collision.  Production Request 32 requests documentation of all claims by BNSF employees for the last 10 years arising from a crossing accident in Nebraska, and Production Request 33 requests all such claims, system-wide, for the last five years. These discovery requests encompass any accident occurring at a grade crossing,

including derailments, collisions involving two trains, collisions of trains and pedestrians or trains and track obstructions, and collisions between motor vehicles and locomotives or motor vehicles and railcars. The document production requests would also include crossing accidents that occurred when no train was present, such as accidents between two or more motor vehicles, single-car accidents, or motor vehicle-pedestrian accidents. Finally, the plaintiff's document production requests would include any collisions with track maintenance or inspection equipment at a crossing. The circumstances of these examples vary widely. Considering the breadth of information requested, the extensive 10-year timeframe for requests about collisions in Nebraska (Interrogatory 21 and Request 32), and the extensive geographical area and five-year timeframe for producing such information for BNSF's entire system (Request 33), the court finds the discovery requests are overbroad on their face, with no attempt to tailor the request to the accident at issue or the purpose of the request. The railroad's response would encompass information so dissimilar from the plaintiff's accident that the discovery is not reasonably calculated to lead to the discovery of relevant information. The plaintiff's motion to compel an answer to Interrogatory 21 and responses to Production Requests 32 and 33 will be denied.

        2.      <u>Discovery of information regarding the alleged hazardous condition of the grade crossing.</u>

The plaintiff claims the grade crossing at County Road 429 in Custer County was hazardous and the railroad failed to adequately design, maintain, or signalize the crossing. Relevant to these issues, Madden served Interrogatories 15, 16, 22, and 23, and Production Requests 18, 22, and 27. The plaintiff's discovery requests, and the railroad's corresponding responses are as follows:

> INTERROGATORY NO. 15: For the ten (10) years prior to the collision, or after the date of the collision, to this Defendant's knowledge, has any governmental entity investigated the sufficiency of and/or need for warning

signals/devices at the subject crossing? If yes, please state the name of the governmental entity that made the request and the dates of said requests.

ANSWER: BNSF objects to this Interrogatory because it is overly broad, vague and ambiguous, particularly in terms of the phrase "investigated the sufficiency of and/or need for warning signals/devices," and insufficiency limited in time and scope seeking (10) years of information. BNSF further objects because the information sought is exempt from discovery pursuant to 23 U.S.C. § 409.

INTERROGATORY NO. 16: At any time, either prior to or after the subject collision, has BNSF requested or petitioned any governmental entity (including but not limited to the Nebraska Department of Transportation) for a review of the site (including the adequacy of and/or need for any warning devices) at the subject crossing? If yes, please state the nature and date of each such request or petition.

ANSWER: BNSF objects to this Interrogatory because it is overly broad, vague and ambiguous, particularly in terms of the phrases "petitioned," "review of the site:·and "adequacy of and/or need for" any warning devices. BNSF further objects because the information sought is exempt from discovery pursuant to 23 U.S.C. § 409. BNSF further objects to this interrogatory to the extent it implies BNSF had a duty to "request or petition any governmental entity" regarding the adequacy of "warning devices" at the crossing.

INTERROGATORY NO. 22: At any time prior to the subject collision, did this Defendant communicate with employees of Custer County, Nebraska, the State of Nebraska, or any employees of the other Defendants in this litigation, concerning any hazards or safety concerns at the crossing where the collision occurred as alleged in Plaintiff s Complaint? lf yes, please identify when every such communication occurred and the names, addresses and employers of all persons involved in said communications.

ANSWER: BNSF objects to this Interrogatory because it is overly broad, irrelevant, insufficiently limited in scope and time, and vague and ambiguous, particularly in terms of the phrase "hazards or safety concerns." BNSF further objects because the information sought is exempt from discovery pursuant to 23 U.S.C. § 409. Without waiving any objections and to the extent plaintiff seeks communications between defendant BNSF and

The Andersons Inc., plaintiff is referred to defendant's response to request nos. 16 and 22.

INTERROGATORY NO. 23: Did Defendant have any program for evaluation of hazards at grade crossings in Nebraska for the ten year period prior to the collision concerned in Plaintiff s Complaint, specifically including the crossing where this collision occurred? If so, please describe such program in detail and identify the person responsible for the program as of the date of the subject collision.

ANSWER: BNSF objects to this Interrogatory as vague and ambiguous, particularly in terms of the phrase "program for evaluation of hazards", and insufficiently limited in time and scope and not likely to lead to the discovery of relevant and admissible evidence. BNSF objects to this Interrogatory because the information sought is exempt from discovery pursuant to 23 U.S.C. § 409. BNSF further objects to this interrogatory to the extent it implies BNSF had a duty to have a "program for evaluation of hazards at grade crossings in Nebraska" or a "person responsible" for any such program.

REQUEST FOR PRODUCTION NO. 18: Any and all documents, logs or reports, sent to and/or received from any federal, state or local agency, governmental agency, and/or any other agency or entity pertaining to the subject collision involving Plaintiff, including but not limited to the federal government and/or State of Nebraska.

RESPONSE: Defendant objects to this Response because it is overly broad, vague, ambiguous, not sufficiently limited in time and scope and seeks information that is not relevant to this lawsuit and is not reasonably calculated to lead to the discovery of relevant and admissible evidence. Defendant further objects because the information sought is exempt from discovery pursuant to 49 C.F.R. § 225.7b, 23 U.S.C. § 409, 49 U.S.C. § 20903 and 49 U.S.C. § 20703. Without waiving said objections, Plaintiff is referred to BNSF's response to Request for Production No. 1.

REQUEST FOR PRODUCTION NO. 22: Any and all documents memorializing, referencing and/or regarding any communications, meetings, and/or interactions between employees, officials and/or representatives of defendant BNSF and employees, officials and/or representatives of any other named Defendants, from 2009 up through the

present time, in any way concerning business relationships between defendant BNSF and any of the other named defendants, specifically with regard to the ownership, lease, custody, control and/or responsibility of the track, equipment, gates, bells, flashers, signs, lights, signals, crossings, hot box detectors, radio towers, vegetation and/or tree maintenance and/or removal, and/or any other equipment or conditions at the crossing where the collision occurred subject to this litigation.

RESPONSE: BNSF produces electronic mail correspondence from BNSF Economic Development Specialist Jon Arita re: The Andersons, Inc. dated October 26, 2011[BNSFOO-BNSFOOJ [sic] with its referenced attachments: ASM Rail Layout Plan revised January 23, 2012 [BNSF00606]; Ae1ial image of the site of referenced site [BNSF 00609]; The Anderson's Track Plan [BNSF 00607]; NBR Approval [BNSF 00608]; and Corporate ROW Map [BNSF 00603]; Contract Preparation Request submitted October 26, 2011 [BNSF 00602]; and Application for Track Contract dated October 25, 2011 [BNSF 00604- BNSF00605.

REQUEST FOR PRODUCTION NO. 27: Copies of any and all sight distance testing, measurements, data, and/or other such documentation regarding the crossing where the collision occurred for the ten ( 10) years prior to the collision, up through the present time.

RESPONSE: Defendant objects to this Response because it is overly broad, vague and ambiguous particularly in the use of the phrase "sight distance testing, measurements, data, and/or other such documentation," not sufficiently limited in time and scope, seeking information not relevant to the claims and defenses of the parties, and not reasonably calculated to lead to the discovery of relevant and admissible evidence. Defendant BNSF further objects because the information sought is exempt from discovery pursuant to 23 U.S.C. § 409.

(Filing Nos. 120-1; 120-2).

The railroad prepared a privilege log listing the documents it did not produce. The plaintiff seeks the documents identified in pages 1-15 of that log; specifically, those documents BNSF withheld based on relevance, 23 U.S.C. § 409, and subsequent remedial measures objections. (Filing No. 119, at CM/ECF p. 14). The primary focus of

the parties' briefing, and the court's review, is the application of 23 U.S.C. § 409, a privilege created by federal statute. BNSF bears the burden of proving this privilege is applicable to the requested, but undisclosed, documents. United States v. Hatcher, 323 F.3d 666, 675 (8th Cir. 2003).

> 23 U.S.C. §409 states as follows:
>
> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409. Section 409 protects information compiled or collected for the Hazard Elimination Program, 23 U.S.C. § 152, which "provides state and local governments with funding to improve the most dangerous sections of their roads." Pierce County, Wash. v. Guillen, 537 U.S. 129, 144 (2003). State or local governments must engage in a thorough evaluation of their public roads to be eligible for federal funds for road improvements. The information "compiled and collected" as part of that evaluation process is protected from discovery or use at trial under 23 U.S.C. § 409. But § 409 "does not protect information that was originally compiled or collected for purposes unrelated to § 152 and that is currently held by the agencies that compiled or collected it, even if the information was at some point 'collected' by another agency for § 152 purposes." Guillen, 537 U.S. at 144. That is, for documents that were not created in the first instance for § 152 purposes, § 409 does not prevent discovery of those documents from their original source, or from any source other than the person or entity that has compiled or collected the documents for § 152 purposes. Guillen, 537 U.S. at 144.

10

The protection of 23 U.S.C. § 409 is applicable if the project is eligible for federal funding:  Actual funding in not required.  Harrison v. Burlington Northern R. Co., 965 F.2d 155 (7th Cir. 1992); Rodenbeck v. Norfolk & Western Ry. Co., 982 F. Supp. 620 (N.D. Ind. 1997).  And the privilege extends to documents collected or compiled by a state agency, other public agencies, or private parties such as railroads.  Powers v. CSX Transp., Inc., 177 F. Supp. 2d 1276 (S.D. Ala. 2001); Rodenbeck v. Norfolk & Western Ry. Co., 982 F. Supp. 620 (N.D. Ind. 1997); Kitts v. Norfolk and Western Ry. Co., 152 F.R.D. 78 (S.D. W. Va. 1993); Taylor v. St. Louis Southwestern Ry. Co., 746 F. Supp. 50 (D. Kan. 1990).

Discovery cannot be used to obtain copies of newspaper articles and correspondence containing information used to evaluate a grade crossing for road improvements from a source that has compiled or collected the information for § 152 purposes.  Robertson v. Union Pac. R.R. Co., 954 F.2d 1433 (8th Cir. 1992) (prohibiting the use of crossing evaluation data from a newspaper article or the use of such information as a basis for expert testimony); Powers v. CSX Transp., Inc., 177 F. Supp. 2d 1276 (S.D. Ala. 2001) (finding a letter to the railroad's director of construction and public projects, which gave the railroad authority to proceed with work on a project and to bill the State for the actual cost, was protected from discovery under 23 U.S.C. 409); Rodenbeck, 982 F. Supp. at 624-625) (holding correspondence between the railroad and the county highway department about a proposal to install stop or yield signs at a railroad crossing was within the scope of § 409).  See also, BNSF Ry. Co. v. Town of Vinton, 980 So.2d 152 (La. App. 3 Cir. 2008) (holding letters and emails which discussed arrangements necessary to reopen a railway crossing, including specifications and estimates of the labor costs associated with the project, were not discoverable); Dowell v. State ex rel. Dept. of Transp. & Development, 750 So. 2d 498 (La. Ct. App. 2d Cir. 2000) (holding letters written by concerned citizens to public agencies concerning highway

safety construction which could be eligible for federal funding were protected from disclosure under § 409); Long v. State, Dept. of Transportation and Development, 743 So. 2d 743 (La. Ct. App. 2d Cir. 1999) (holding § 409 applied to a letter from a town's mayor to the Louisiana Department of Transportation and Development (DOTD) informing the DOTD of a fatal accident and other events at a railroad crossing in the town); Rothermel v. Consolidated Rail Corp., 1998 WL 110010 (Del. Super. Ct. 1998) (§ 409 applied to letters between and the city mayor and the state, railroad, and state and federal elected officials providing notice of concerns that a city crossing was dangerous); Miss Sawyer v. Illinois Cent. Gulf R. Co., 606 So. 2d 1069 (Miss. 1992) (holding the correspondence from a town to the state highway department expressing the need for safety enhancements at railroad crossings was data collected for the purpose of identifying safety enhancements for such crossings under § 409). And a party cannot circumvent the § 409 privilege by asking a witness to testify to matters the witness learned from documents protected by the statute. Powers v. CSX Transp., Inc., 177 F. Supp. 2d 1276 (S.D. Ala. 2001).

The railroad has produced, for *in camera* review, the file maintained by Andy Amparan, the Manager of Public Projects for BNSF Railway Company. Amparan was directly involved in communications to evaluate the railroad grade crossing at issue. Amparan avers that the documents within his file, as listed in the railroad's privilege log, were collected or created to identify, evaluate, and plan safety improvements to the accident crossing using Federal-aid highway funds, or to determine if closure was warranted. (Filing No. 128-2).

The court has reviewed the documents listed in pages 1-15 of the privilege log and, applying the legal standards outlined above, finds the vast majority of those documents, including emails and correspondence, contain references to:

12

- comments made by state and local government personnel, the adjacent industry and its employees, and local citizens about the condition of the crossing;
- requests, concerns, or objections to changing it;
- federal and state funding requests;
- observations at the crossing;
- statements about the types and numbers of vehicles using the intersection, and any seasonal changes in that use;
- reports of accidents and any near misses at the crossing;
- suggestions made or options considered for modifying the roadway/railway layout or for adding passive or active signal protection at the crossing;
- stated concerns and objections to closing the crossing;
- potential project plans; and/or
- the availability of federal funds.

These documents contain data collected and compiled for § 152 purposes.

But documents which merely reflect scheduled meetings and the names of meeting attendees or invitees are not "reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites." (23 U.S.C. § 409).  As such, BNSF must produce bates-stamped pages BNSFCXF00014; BNSFCXF00045; BNSFCXF00049; BNSFCXF00067;

| | | | |
|---|---|---|---|
| BNSFCXF00084; | BNSFCXF00093; | BNSFCXF00046; | BNSFCXF00054; |
| BNSFCXF00051; | BNSFCXF00098; | BNSFCXF00101; | BNSFCXF00056; |
| BNSFCXF00063; | BNSFCXF00064; | BNSFCXF00099; | BNSFCXF00100; |
| BNSFCXF00068; | BNSFCXF00073; | BNSFCXF00078; | BNSFCXF00136; |
| BNSFCXF00083; | BNSFCXF00132; | BNSFCXF00158; | BNSFCXF00160; |
| BNSFCXF00161; | BNSFCXF00162; | BNSFCXF00163; | BNSFCXF00164; |
| BNSFCXF00165; | BNSFCXF00166; | BNSFCXF00168; | BNSFCXF00189; |
| BNSFCXF00171; | BNSFCXF00172; | BNSFCXF00173; | BNSFCXF00196; |

BNSFCXF00197; BNSFCXF00198; BNDOR00001.

13

All other documents listed in pages 1-15 of the railroad's privilege log are not subject to discovery pursuant to 23 U.S.C. § 409, and were properly withheld by the railroad.

## Motion to Continue (Filing No. 142)

On August 4, 2014, the railroad filed a motion to continue, arguing the plaintiff has not reached maximum medical improvement.  The railroad argues the medical and vocational rehabilitation expert disclosure deadlines should be continued, along with the trial and pretrial conference.  The plaintiff strenuously objects, arguing the plaintiff's brain injury and Post-Traumatic Stress Disorder (PTSD) are permanent, and any trial delay is unwarranted.  The plaintiff requested and was afforded a telephonic hearing on that issue.  After hearing the parties' arguments, the court continued the expert disclosure deadline for the railroad's medical and vocational rehabilitation experts until further order of the court.  The court re-set a hearing for September 2, 2014.

Based on the evidence before the court, the plaintiff is now receiving a treatment which may alleviate his symptoms.  The plaintiff began biofeedback for his symptoms in May of 2014.  (Filing No. 145-5, at CM/ECF p. 13).  His medical records indicate his symptoms may be improving as a result of that treatment.  As of July 2014, he was advised to see a headache specialist.  (Filing No. 145-5, at CM/ECF p. 15).

Although the plaintiff's diagnosis of PTSD and traumatic brain injury are permanent, based on the evidence of record, the extent of his resulting impairments may not be.  His emotional symptoms, including depression, fatigue, headaches, and anxiety, certainly impact his quality of life, and his ability to care for himself and become employed.  These symptoms impact his cognitive abilities and, in turn, the ability to validly perform tests to determine the nature and extent of his injury.  (Filing No. 145-3, at CM/ECF p. 4-5, 16).  As explained by Stephen S. Kalat, Ph.D., "Mr. Madden likely has multiple physical and emotional symptoms that are impinging on his ability to

14

perform reliably on the testing.  Improvement in his emotional and physical status may be required before a valid sample of neurocognitive abilities can be obtained." (Filing No. 145-3, at CM/ECF p. 18).

The plaintiff is requesting recovery for pain and suffering, emotional distress, diminished or lost earning capacity, and damages for household services he can no longer perform.  As of now, it is not clear whether new treatment modalities will ameliorate his symptoms.  And if so, those treatments will impact his damage claims and his ability to engage in further medical testing.  Under such circumstances, a continuance is warranted.

Accordingly,

IT IS ORDERED:

1)      The plaintiff's motion to compel, (Filing No. 118), and the railroad's motion for protective order, (Filing No. 126), are each granted in part and denied in part as follows:

      a.      The plaintiff's motion to compel responses to Interrogatory 21, and Requests for Production 32 and 33 is denied.

      b.      The defendant shall produce the following bates-stamped pages of the documents identified in pages 1 through 15 of its privilege log:

| | | |
|---|---|---|
| BNSFCXF00014; | BNSFCXF00045; | BNSFCXF00049; |
| BNSFCXF00067; | BNSFCXF00084; | BNSFCXF00093; |
| BNSFCXF00046; | BNSFCXF00054; | BNSFCXF00051; |
| BNSFCXF00098; | BNSFCXF00101; | BNSFCXF00056; |
| BNSFCXF00063; | BNSFCXF00064; | BNSFCXF00099; |
| BNSFCXF00100; | BNSFCXF00068; | BNSFCXF00073; |
| BNSFCXF00078; | BNSFCXF00136; | BNSFCXF00083; |
| BNSFCXF00132; | BNSFCXF00158; | BNSFCXF00160; |
| BNSFCXF00161; | BNSFCXF00162; | BNSFCXF00163; |
| BNSFCXF00164; | BNSFCXF00165; | BNSFCXF00166; |
| BNSFCXF00168; | BNSFCXF00189; | BNSFCXF00171; |
| BNSFCXF00172; | BNSFCXF00173; | BNSFCXF00196; |

BNSFCXF00197; BNSFCXF00198; BNDOR00001.

c.      With the exception of the pages identified above, the railroad's motion for
protective order, (Filing No. 126), is granted, and the plaintiff's motion to compel
responses to Interrogatories 15, 16, 22, and 23, and Production Requests 18, 22, and 27 is
denied.

    2.      The railroad's motion to continue, (Filing No. 142), is granted.

    3)      The plaintiff's motion, (Filing No. 160), is granted.  A telephonic
conference with the undersigned magistrate judge will be held on
**September 2, 2014** at **9:00 a.m.** **(CDT)** to discuss further case progression.
The court will provide call in information for the call.

September 1, 2014.

            BY THE COURT:

            *s/ Cheryl R. Zwart*
            United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of
Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they
provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.
The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a
hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.